UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNE MARIE JOHNSON,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-06989-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Joanne Marie Johnson ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 8 and 11] and briefs addressing disputed issues in the case [Dkt. 17 ("Pl. Br.") and Dkt. 18 ("Def. Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In June 2013, Plaintiff filed an application for DIB, alleging disability beginning on January 20, 2011. [Dkt. 13, Administrative Record ("AR") 20, 155.]

After Plaintiff's application was denied initially and on reconsideration, a hearing was held before Administrative Law Judge Mary L. Everstine ("the ALJ") on March 22, 2016. [AR 202, 60-81, 108-12, 115-19.] On April 27, 2016, the ALJ issued an unfavorable decision. [AR 20-29.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 404.1520(b)-(g)(1). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 20, 2011, through her date last insured of March 31, 2015. [AR 22.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of rheumatoid arthritis and asthma. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 24.] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work (20 C.F.R. § 404.1567(b)), which involves no more than occasional stair climbing, balancing, stooping, kneeling, crouching, and crawling and does not involve any ladder climbing, operating of moving machinery, or concentrated exposures to dust, fumes, or respiratory irritants. [AR 24.] At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a payroll clerk and job development specialist through her date last insured, as those jobs were actually performed by Plaintiff and as generally performed in the national economy. [AR 28-29.]

The Appeals Council denied review of the ALJ's decision on July 17, 2017. [AR 1-4.] This action followed.

Plaintiff raises the following issues challenging the ALJ's findings and determination of non-disability:

1. The ALJ erred in rejecting Plaintiff's testimony regarding her subjective symptoms and functional limitations.

2

2. The ALJ erred in rejecting the opinion of Plaintiff's treating physician regarding Plaintiff's functional limitations.
3. The ALJ erred in finding that Plaintiff has the ability to perform her past relevant work.

[Pl. Br. at 2-12.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [*Id.* at 13-14.]

The Commissioner asserts that the ALJ's decision should be affirmed, or in the alternative, remanded for further development of the record. [Def. Br. at 3-14.]

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal

3

quotation marks and citations omitted).

## IV. DISCUSSION

### A. Plaintiff's Subjective Symptom Testimony

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Pl. Br. 2-7.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer "specific, clear and convincing reasons" to reject the claimant's testimony concerning the severity of her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017) (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and discuss the evidence that undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . . ,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting Social Security Ruling 16-3p). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, Plaintiff testified that she has significant limitations in her ability to work due to rheumatoid arthritis and problems related to her hands, feet, shoulders, and back. [AR 25, 65, 69.] She claimed that she is able to walk only two blocks before wanting to rest and cannot sit, stand, or lie down for long periods, as she needs to change positions every 15 minutes. [AR 72-73.] Plaintiff alleged that she

has pain in her fingers and toes, no feelings in her fingertips, and difficulty using her hands for activities such as writing a letter, opening a bottle, and buckling her belt. [AR 73-74.] Plaintiff testified that she received Enbrel injections for her rheumatoid arthritis for five years, which seemed to "work[ ] well for the first four years," but "tapered off" in the fifth year. [AR 66.] At the time of her March 2016 hearing, Plaintiff was taking prednisone and Norco for her rheumatoid arthritis, as her medical insurance (Medi-Cal) did not cover Enbrel and her body had stopped responding well to Enbrel. [AR 65-66.] Plaintiff testified that she was exhausted and distracted from pain and her medications made her feel "foggy." [AR 76.]

As set forth below, the ALJ offered specific, clear and convincing reasons for discounting Plaintiff's subjective testimony regarding her alleged debilitating symptoms and impairments. *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

### 1. Lack of Supporting Medical Evidence

The ALJ found that Plaintiff's statements concerning her extremely restrictive limitations were not consistent with the objective medical record. [AR 26.] "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857. *See also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that the treatment notes from Plaintiff's rheumatologist, Dr. Saman Thakker, indicated that Plaintiff's rheumatoid arthritis was "generally under control with medication and her symptoms [were] stable." [AR 25.] A review of Plaintiff's medical records supports the ALJ's finding. For example, in March 2011, shortly after Plaintiff's alleged onset date, Dr. Thakker reported that Plaintiff was "doing quite well" on Enbrel, despite some complaints of shoulder pain after lifting a heavy grocery bag. [AR 25, 291.] Dr. Thakker reported that Plaintiff's rheumatoid arthritis was in clinical remission in November 2011, and described Plaintiff as "doing well" in February 2012, August 2012, and February 2013. [AR

5

25, 282-83, 286, 288.] In addition, Dr. Thakker noted that Plaintiff had not taken any pain medications despite occasional flare-ups in February 2012, and that Plaintiff hardly had "any pain" and had started applying for work by February 2013. [AR 25, 282-83.] And, while Plaintiff often complained of some tenderness or discomfort in various joints (*i.e.*, knees, shoulders, ankles, hands, toes, spine), Dr. Thakker did not report any fever, infections, synovitis, swelling, or edema. [AR 25-26, 281-83, 285-88, 291, 489.]

The ALJ also noted that Plaintiff's primary treating physician, Dr. Gerald Radlauer, found that Plaintiff's rheumatoid arthritis symptoms were generally under fair control with Enbrel. [AR 25, 317.] While Plaintiff's rheumatoid arthritis became symptomatic (arthralgias and myalgias) in June 2015, after Plaintiff had stopped receiving Enbrel injections, Dr. Radlauer reported that Plaintiff's myalgias were controlled with Norco by July 2015. [AR 25, 516.][1]

Plaintiff asserts that in rejecting her subjective symptom testimony, the ALJ selectively relied on Dr. Thakker's and Dr. Radlauer's medical records from 2012 and 2013, which indicated that she was "doing well" and her "rheumatoid arthritis symptoms were under 'fair control.'" [Pl. Br. at 5.] Although Plaintiff admits that Enbrel "was effective in alleviating her rheumatoid arthritis symptoms" in 2012 and 2013, she argues that it was improper for the ALJ to rely on those "isolated portions of the treatment records" to reject her testimony, as she subsequently lost her medical insurance and had to stop taking Enbrel by 2015. [Pl. Br. at 5.] Contrary to

---

[1] The ALJ also found that Plaintiff's asthma was generally controlled with medication. [AR 26.] Plaintiff had two hospital visits in June 2013, for complaints of shortness of breath and was diagnosed with acute asthma exacerbation, acute flare of rheumatoid arthritis, and bronchitis. [AR 237, 246.] However, Plaintiff's September 2013 chest x-ray was normal and Dr. Radlauer reported that Plaintiff's asthma was under fair control with medication in December 2013. [AR 26, 397, 461.] Since October 2014, Dr. Radlauer consistently reported that Plaintiff's asthma was asymptomatic and/or controlled with medication. [AR 26, 508, 512, 516, 520, 521, 532.]

Plaintiff's argument, however, the ALJ did not selectively rely on medical records from only 2012 and 2013. In finding that Plaintiff's subjective symptom testimony was not supported by the medical evidence, the ALJ cited medical records pertaining to the relevant period from her alleged onset in 2011 through her date last insured in 2015. [AR 25-26.] And, as discussed, Plaintiff's medical records showed that Plaintiff's symptoms from rheumatoid arthritis were generally controlled with Enbrel injections from 2011 through 2014, and that Norco helped to alleviate Plaintiff's symptoms after she stopped taking Enbrel. Thus, the ALJ reasonably concluded that the objective medical evidence failed to support the degree of symptoms and limitations alleged by Plaintiff in her testimony. Lack of supporting objective medical evidence could therefore be relied on to support the ALJ's overall conclusion based on the additional reasons stated in the opinion. [Pl. Br at 5; AR 25, 66, 282-83, 286, 288, 291, 317, 508, 516, 532.]

### 2. Search for Work After Onset Date and Part-Time Work After Date Last Insured

The ALJ noted that Plaintiff attempted to find work more than a year after her alleged onset date and actually worked on a part-time basis after her date last insured. [AR 22, 26.] In February 2013, Plaintiff reported that she was having hardly any pain and was trying to apply for a job. [AR 283.] In May 2013, Plaintiff again reported that she was trying to find work. [AR 281.] From May 4, 2015 to December 2, 2015, Plaintiff had a part-time job and worked 16 to 19.5 hours a week. [AR 22, 26, 63-64.] The ALJ reasonably concluded that Plaintiff's search for employment and part-time work were inconsistent with her testimony that she suffered from disabling impairments and limitations since 2011. *See Bray v. Astrue*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that the claimant recently worked as a personal caregiver and sought out other employment since then was an adequate basis for discounting the claimant's testimony); *see also* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show

7

that you are able to do more work than you actually did."); *Light v. Soc. Sec. Admin.* 119 F.3d 789, 792 (9th Cir. 1997) (in evaluating a claimant's testimony, the ALJ may consider "inconsistencies either in his testimony or between his testimony and . . . his work record . . . ."). Plaintiff argues that her prior attempts to find work did not reflect an actual ability to sustain work activity, and her problems with focus, concentration and frequent mistakes led to her termination from her part-time job. [Pl. Br. at 6-7.] Nevertheless, Plaintiff's search for work indicated that she held herself out as capable of working during the time she alleged she was disabled and her performance of part-time work showed that she had a capacity to work that far exceeded her claimed limitations. *See Light*, 119 F.3d at 792. To the extent the evidence in the record is subject to more than one interpretation, the ALJ's interpretation thereof was rational and reasonable, and therefore the Court must uphold it. *See Rollins*, 261 F.3d at 857.

Accordingly, the ALJ provided specific, clear and convincing reasons supported by substantial evidence to support the ALJ's decision to discount Plaintiff's subjective symptom testimony.

**B. Dr. Radlauer's Opinion**

Plaintiff contends the ALJ erred by improperly rejecting Dr. Radlauer's assessments of Plaintiff's work-related functional limitations. [Pl. Br. at 7-12 (citing AR 446-48, 545-46).]

The ALJ is tasked with resolving conflicts in the medical evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at

8

830-31). If a treating or examining doctor's opinion is contradicted by another medical opinion, an ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Orn*, 495 F.3d at 633). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (internal quotation marks and citation omitted).

Dr. Radlauer began treating Plaintiff in 2008. [AR 433.] In October 2013, Dr. Radlauer completed a medical source statement assessing Plaintiff with significant work-related limitations. [AR 432-33.] Dr. Radlauer opined that Plaintiff was limited to lifting and/or carrying less than 10 pounds, standing and/or walking less than 2 hours in an 8-hour workday, and sitting less than 6 hours in an 8-hour workday. [AR 432-33.] Dr. Radlauer found that Plaintiff needed to alternate between sitting and standing constantly and would need to use a cane if she walked a lot. [AR 433.] Dr. Radlauer also reported that Plaintiff had limitations in reaching, handling, feeling, and balancing and was precluded from climbing, stooping, kneeling, crouching, crawling, and working in environments involving heights, moving machinery, temperature extremes, chemicals, and dust. [AR 433.]

In February 2016, almost a year after Plaintiff's date last insured, Dr. Radlauer completed a second, less restrictive medical source statement. [AR 545-46.] Dr. Radlauer found that Plaintiff was still limited to lifting and/or carrying less than 10 pounds and standing and/or walking less than 2 hours in an 8-hour workday. [AR 545.] Dr. Radlauer also found Plaintiff needed to alternate between standing and sitting constantly and was precluded from feeling (with fingertips) and working

around heights, moving machinery, temperature extremes, chemicals and dust. [AR 545-46.] But unlike in his earlier medical source statement, Dr. Radlauer found that Plaintiff could sit 6 hours in an 8-hour workday, frequently balance and finger, and occasionally climb, stoop, kneel, crouch, crawl, reach, and handle. [AR 545-46.]

The ALJ gave "little weight" to the work restrictions assessed by Dr. Radlauer, as they were unsupported by his own treatment records and more restrictive than those found by any other medical source. [AR 27.] Instead, the ALJ gave "great weight" to the state agency medical consultants, Dr. Pamela Ombres and Dr. M. Gleason, who found Plaintiff could perform a range of light work, consistent with the ALJ's RFC assessment. [AR 24, 26-27, 86-92, 100-04.] As substantial medical evidence contradicts Dr. Radlauer's opinion, the ALJ only needed to provide specific and legitimate reasons supported by substantial evidence in the record to discount his opinion. *See Bayliss*, 427 F.3d at 1216. The ALJ did so here.

The ALJ found that some of the "overly restrictive" limitations assessed by Dr. Radlauer were unsupported by any objective findings in his own treatment notes. [AR 27.] As noted, Dr. Radlauer's medical records showed that Plaintiff's rheumatoid arthritis symptoms were generally controlled with Enbrel injections from 2011 through October 2014, and after Plaintiff stopped taking Enbrel, Norco helped to alleviate Plaintiff's symptoms. [AR 317, 319, 323, 327, 331, 334, 341, 343, 347, 351, 434, 436, 438, 508, 516, 532.] Dr. Radlauer also frequently reported that Plaintiff's peripheral vascular, neurologic, and musculoskeletal examinations were normal. [AR 460, 506-07, 510-11, 514, 518, 522, 526, 530.] Dr. Radlauer's treatment notes and medical source statements did not contain any information to explain how Plaintiff's medical conditions could translate into the specific and severe limitations that he assessed (*e.g.*, need to constantly alternate between standing and sitting and lifting and/or carrying less than 10 pounds). Thus, the lack of objective findings in Dr. Radlauer's own medical records was a specific, legitimate basis for discounting his opinion. *See Connett v. Barnhart*, 340 F.3d 871,

875 (9th Cir. 2003) (upholding rejection of treating physician's opinion as his own treatment notes did not support extensive conclusions regarding the claimant's limitations); *Bayliss*, 427 F.3d at 1216 (discrepancy between doctor's recorded observations regarding the claimant's capabilities and statement that the claimant could stand or walk for only 15 minutes at a time was a clear and convincing reason for not relying on the doctor's opinion).

The ALJ also observed that the work restrictions assessed by Dr. Radlauer in October 2013 conflicted, somewhat, with the limitations that he assessed in February 2016. [AR 27.] In October 2013, Dr. Radlauer restricted Plaintiff to sitting less than 6 hours in a workday, but by February 2016, Dr. Radlauer found that Plaintiff could sit a full 6 hours in a workday. [AR 27, 432, 545.] Dr. Radlauer also reported that Plaintiff's postural limitations had significantly improved by February 2016. [AR 27, 433, 546.] Dr. Radlauer's treatment records, however, provide no basis for Plaintiff's increased functional abilities. Therefore, the ALJ properly accorded Dr. Radlauer's opinion less weight. *See Connett*, 340 F.3d at 875; *Gabor v. Barnhart*, 221 F. App'x 548, 550 (9th Cir. 2007) ("internal inconsistencies" in physician's report provided a proper basis for excluding that medical opinion).

### C. Past Relevant Work

Plaintiff contends that the ALJ failed to include all of her limitations, as described during her testimony and as assessed by Dr. Radlauer, in the hypothetical question posed to the vocational expert, and, as a result, the ALJ's determination that she is capable of performing her past relevant work is not based on substantial evidence. [Pl. Br. at 12 (citing AR 79).] The Court disagrees. The ALJ gave specific, clear and convincing reasons for discounting Plaintiff's symptom testimony and specific and legitimate reasons for disregarding Dr. Radlauer's opinion that Plaintiff had limitations that exceeded Plaintiff's RFC, as set forth in the decision. [AR 24-26.] Therefore, the ALJ did not need to incorporate those rejected

limitations into the hypothetical question posed to the vocational expert. [AR 24, 79.] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (hypothetical questions posed to a vocational expert need not include all alleged limitations, but rather only those limitations the ALJ finds to exist). Moreover, because all the limitations identified in Plaintiff's RFC were included in the hypothetical question, the vocational expert's testimony provided substantial evidence for the ALJ's step four determination that Plaintiff was capable of performing her past relevant work. [AR 24, 79]; *Bayliss*, 427 F.3d at 1217 (the ALJ could properly rely on vocational expert's testimony as the hypothetical question "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record").

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: October 2, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE